March 1, 1906. The opinion of the Court was delivered by
This is a petition on the part of two stockholders of the Savings Bank of Rock Hill, praying that certain assets formerly belonging to said bank be applied to the extinguishment of the claim upon which suit was brought against them by a creditor of the bank. The facts are as follows: In 1898, the Savings Bank of Rock Hill decided to go into liquidation. At that time it was in a sound financial condition, with assets sufficient to pay all outstanding liabilities, and $133 on each share of stock. Sufficient assets of the bank were turned over to the National Bank of Rock Hill, to *Page 395 
pay the stockholders of the Savings Bank eighty per cent. upon their shares of stock. These stockholders and those of the National Bank combined and formed the National Union Bank of Rock Hill. Subsequently, the remaining assets of the Savings Bank, amounting to about $67,000, were sold to the Commercial and Farmers' Bank, with the understanding that it would pay to the stockholders of the Savings Bank $53 per share, and also the outstanding liabilities of the latter bank, which assets were sufficient for that purpose. The transfer of the assets was made in good faith. The Commercial and Farmers' Bank was then solvent, and all stockholders and creditors who presented their claims were promptly paid.
One of the outstanding obligations of the Savings Bank, at the time its remaining assets were transferred to the Commercial and Farmers' Bank, was a certificate of deposit for $1,000, issued by the Savings Bank to A.A. McDonnough, who was a nonresident and died outside the State. His certificate of deposit was not presented by his legal representative until the Commercial and Farmers' Bank had become insolvent and gone into the hands of a receiver. Among the assets of the Savings Bank transferred or sold to the Commercial and Farmers' Bank, were a note and mortgage on a tract of land, for several thousand dollars, executed by J. Edgar Poag. The mortgage was foreclosed, and the land conveyed to the said receiver, who, as such, is now in possession thereof. The administrator of McDonnough's estate recovered judgment against the Savings Bank in 1903; execution was issued, and after a return of nulla bona, he commenced action against the petitioners.
The administrator proved said claim, against the Commercial and Farmers' Bank, after it became insolvent, without the assertion of a lien on the proceeds arising from the sale of the Poag property, and has received a dividend from that bank, amounting to $361.83.
The special referee finds that the administrator did not thereby waive any of his rights in the premises. The special *Page 396 
referee recommended that the prayer of the petition be granted, and based his conclusion on the principles stated in 10 Enc., page 1367d.
On hearing the exceptions to the report of the special referee, his Honor, the Circuit Judge, filed a decree, in which he stated that he concurred with the special referee in all his conclusions except that in which he held that the creditor of the Savings Bank has a priority over the creditors of the Commercial and Farmers' Bank to be paid out of the Poag mortgage. This, then, is the vital question in the case, and involves the construction of the agreement, under which the Commercial and Farmers' Bank came into possession of the said assets.
The only facts which the special referee found as to the terms of the contract are, "that the remaining assets of the Savings Bank, amounting, according to the statement submitted before me, to $67,000, were then sold to the Commercial and Farmers' Bank, another new bank just organized and commencing business, with the understanding that the Commercial and Farmers' Bank would pay to the stockholders of the Savings Bank $53 per share, and also pay the outstanding liabilities of the Savings Bank."
It will be well, at the outset, to determine the relation which the Savings Bank sustained to its assets and creditors. In the case of R.R. Co. v. Howard, 7 Wall., 392, 409, the doctrine is thus announced: "Equity regards the property of a corporation, as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it, into whosoever possession it may be transferred, unless it has passed into the hands of a bona fide
purchaser; and the rule is well settled that stockholders are not entitled to any share of the capital stock, nor to any dividend of the profits, until all the debts of the corporation are paid. * * * If the fund has been distributed among the stockholders, or passed into the hands of other than bona fide
creditors or purchasers, leaving any debts of the corporation unpaid, the established rule in equity is, that such holders *Page 397 
take the fund charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the same to the satisfaction of their debts. * * * Creditors are preferred to stockholders, on account of the peculiar trust in their favor, and because the latter, as constituent members of the corporate body, are regarded as sustaining in that respect the same relation to the former as that sustained by the corporation." These principles are recognized in the case of Dabney v. Bank, 3 S.C. 124.
It is thus made apparent that the assets, while in the hands of the Savings Bank, were a trust fund for the payment of its creditors. Our interpretation of the contract is, that although it was the intention of the parties to vest the legal title to the assets in the Commercial and Farmers' Bank, it was, nevertheless, likewise intended that the last mentioned bank should assume the same relation to the assets and creditors that was imposed on the Savings Bank. In other words, that the Commercial and Farmers' Bank was substituted in the place of the Savings Bank, with all its rights, and with all the incidental burdens, relative to said assets and creditors. The Commercial and Farmers' Bank came into possession of the assets, knowing that they were impressed with a trust. It entered into an agreement to discharge all the duties that rested upon the Savings Bank as a trustee, in so far as they affected the rights of its creditors. Having undertaken to discharge the duties of a trustee, it must be regarded as a trustee. One of the duties which it must be held to have assumed, under the terms of the agreement, was to administer the trust estate which came into its possession, in such a manner that the trust would be carried into effect and not defeated. There was no intention to deprive the creditors of their right to subject the assets to the payment of their claims, as long as the assets remained in the hands of the substituted trustee. Furthermore, when the assets were disposed of, the Savings Bank did not receive the consideration in money, which would have become an asset out of which its creditors could have been paid; but the consideration *Page 398 
was a promise on the part of the Commercial and Farmers' Bank which it did not wholly fulfill. The administrator of McDonnough's estate, therefore, stands upon higher ground than the creditors of the Commercial and Farmers' Bank, as to the proceeds arising from the foreclosure of the mortgage executed by Poag.
The respondents gave notice that they would ask that the judgment of the Circuit Court be affirmed, upon the additional ground that the statute of limitations should have been sustained. The Circuit Judge in his decree says: "This conclusion renders it unnecessary to consider the plea of the statute of limitations sought to be set up by the defendants, and which I would allow to be made if necessary to the protection of the defendants." This Court cannot consider the statute of limitations, as the Circuit Court has not made a ruling thereon. All questions relating to the statute of limitations will be left open for determination, when the case is remanded.
We must not be understood as intimating any opinion whatever, upon the questions left open.
It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for the sole purpose mentioned in the opinion.